**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Michael Nagle,<br><br>Plaintiff,<br><br>v.<br><br>Townsquare Media, Inc. d/b/a 981thehawk.com,<br><br>Defendant. | Case No:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Michael Nagle ("Plaintiff"), by and through his undersigned counsel, for his Complaint against defendant Townsquare Media, Inc. d/b/a 981thehawk.com ("Defendant") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq.

2. Plaintiff is a professional photojournalist based in New York City. He created five photographs of Anton Nootenboom completing a 260-day barefoot walk from Los Angeles to New York City (the "Photographs"), which were first published by the New York Post on November 2, 2024.

3. Four days later, Defendant published an article about the same event on its website, 981thehawk.com, and chose to illustrate that article by embedding a third-party YouTube video built from Plaintiff's Photographs. Plaintiff never authorized the creation or upload of that video, and Defendant never sought or obtained a license to display the Photographs.

## PARTIES

4. Plaintiff is an individual who resides in Kings County, New York.

5. Defendant Townsquare Media, Inc. is a Delaware corporation with a principal place of business at 4 Manhattanville Road, Suite 107, Purchase, in Westchester County, New York, and does business as 981thehawk.com.

SLG SANDERS · LAW GROUP ·

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over the federal copyright infringement claim pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in New York.

8. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

**FACTS COMMON TO ALL CLAIMS**

**A. Plaintiff's Business**

9. Plaintiff is an accomplished, award-winning professional photographer and photojournalist based in New York City whose work has documented significant news events, politics, business, culture, sports, and daily life throughout the United States.

10. Plaintiff is a regular contributor to The New York Times and Getty Images, and his work has been published by numerous media outlets, including The New Yorker, Time, Newsweek, Bloomberg News, Fortune, Rolling Stone, National Geographic Adventure, Wired, The Wall Street Journal, The Washington Post, The Los Angeles Times, Reuters, USA Today, The Guardian, The New York Post, and The New York Times Magazine, among many others.

11. Over the course of his career, Plaintiff has invested substantial time, effort, training, and resources in developing his craft and producing a large body of original photographic works. His photography requires specialized equipment, technical expertise, post-production editing, and, frequently, travel and on-location coverage to capture unique and newsworthy subjects.

12. Plaintiff's photographs are recognized for their quality, originality, and journalistic significance, and he has established a substantial portfolio of copyrighted works that have commercial value.

13. As the author and copyright owner of his photographs, Plaintiff derives income from the licensing and authorized use of his works. He carefully manages and protects his intellectual property rights and relies upon the licensing market for his photographs as an important component of his livelihood. Unauthorized reproduction, display, distribution, or use of his copyrighted images diminishes the value of his work and usurps licensing opportunities to which he is entitled.



SLG SANDERS LAW GROUP

**B. Plaintiff's Copyright Ownership**

14. On November 2, 2024, Anton Nootenboom completed a 260-day barefoot walk from Los Angeles to New York City, finishing in Times Square. Plaintiff photographed the final leg of the walk and its conclusion.

15. On November 2, 2024, five of those photographs were first published by the New York Post in an article at https://nypost.com/2024/11/02/us-news/man-walked-barefoot-from-la-to-ny-to-break-guinness-world-record/. The Photographs are identified by the file names 110224_barefoot0014.JPG, 110224_barefoot0015.JPG, 110224_barefoot0016.JPG, 110224_barefoot0021.JPG, and 110224_barefoot0028.JPG, and depict Mr. Nootenboom with his girlfriend and dog, the bottom of Mr. Nootenboom's foot, Mr. Nootenboom crossing a New York City street barefoot (two photographs), and Mr. Nootenboom reaching the finish line in Times Square. Copies of the Photographs are attached hereto as part of Exhibit 1.

16. On January 3, 2025, the Photographs were registered by the United States Copyright Office (the "USCO") as part of a group registration of published photographs under Registration No. VA 2-430-157, within three months of their first publication.

SLG SANDERS · LAW GROUP ·

**A.** 17. The group registration covers each of the Photographs as a separate work. See 37 C.F.R. § 202.4(i). Each of the Photographs was separately composed and captured, depicts a different scene, has independent economic value, and is licensed separately. Plaintiff is the author and sole owner of the copyright in each of the Photographs.

17. In creating the Photographs, Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens, and camera equipment used to capture the Photographs and made each and every artistic determination necessary for the creation of the works.

18. The Photographs are original, creative works in which Plaintiff owns protectable copyright interests.

19. Plaintiff created the Photographs with the intention of them being used commercially and for the purpose of display and/or public distribution, including through licensing to media organizations.

**C. The Unauthorized Video**

20. At some point after the Photographs were first published, a YouTube channel operating under the name "Headline Today" uploaded a video titled "Man who walked barefoot from LA to NY for 260 days sets Guinness World Record" (the "Unauthorized Video"). The

Unauthorized Video is composed of the Photographs, displayed one after another with added text, graphics, and the "Headline Today" logo.

21. The Unauthorized Video, available at https://www.youtube.com/watch?v=N7-3DIfDp18, runs four minutes and fourteen seconds and contains no original footage; for its entire length, it displays the Photographs in a repeating loop. The "Headline Today" channel is not a news organization.

22. The thumbnail image for the Unauthorized Video, which YouTube displays in the video player before the video is played, is a composite that includes at least two of the Photographs.

23. Plaintiff licensed the Photographs to the New York Post on a non-exclusive basis, for publication by the Post only, and without any right to sublicense. Plaintiff did not upload the Unauthorized Video, did not authorize "Headline Today" or any other person to reproduce the Photographs in, or upload, the Unauthorized Video, and did not authorize any licensee of the Photographs to sublicense them for that purpose.

24. YouTube's license to display a video through its embedded player derives entirely from the license the uploader grants YouTube when uploading it. An uploader that owns no rights in the content it uploads can grant YouTube no license, and YouTube in turn can sublicense nothing to those who embed it. Because neither "Headline Today" nor anyone else uploaded the Photographs with Plaintiff's authorization, no license to display them ever reached YouTube or Defendant.

SLG SANDERS · LAW GROUP ·

**D. Defendant's Infringing Activity**

25. Defendant is a media company that owns and operates local radio stations throughout the United States, together with a website for each station that publishes news, entertainment, and other content.

26. Defendant is a publicly traded company (NYSE: TSQ) that describes itself as "a community-focused digital and broadcast media and digital marketing solutions company." According to its most recent annual report on Form 10-K, as of March 9, 2026, Defendant owned and operated 340 radio stations in 74 local markets, together with a portfolio of more than 400 local news and entertainment websites and mobile apps.

27. Defendant's websites are central to how it makes money. Defendant generates revenue by selling advertising displayed to the audiences its websites attract, connecting local, regional, and national advertisers to consumers across its portfolio of websites and apps. According

to its Form 10-K, Defendant's digital revenue was $236.0 million in 2025, comprising 55% of its total net revenue. Visual content such as photographs and video draws readers to Defendant's articles and, in turn, increases the advertising inventory Defendant can sell.

28. Defendant owns and operates, and is responsible for the content of, the website at 981thehawk.com (the "Website"), the website of its radio station 98.1 The Hawk.

29. The Website is a key component of Defendant's commercial enterprise. The Website is monetized in that it contains paid advertisements, promotes Defendant's radio broadcasts, mobile application, and social media channels, and, upon information and belief, Defendant profits from these activities.

30. On or about November 6, 2024, four days after the Photographs were first published, Defendant published an article on the Website at https://981thehawk.com/raising-awareness-men-mental-health/ (the "Article"), reporting on Mr. Nootenboom's completion of his barefoot walk from Los Angeles to New York City, the same event the Photographs depict.

31. Defendant selected the Unauthorized Video and embedded it in the body of the Article. When the Article loads, without any action by the visitor, the embedded player displays the Unauthorized Video's thumbnail, which includes at least two of the Photographs. When the video is played, the embedded player displays each of the five Photographs within the Article (collectively, the "Infringements").

32. Defendant chose to illustrate the Article with the Unauthorized Video while the Photographs were visible in it. Defendant's selection and placement of the Unauthorized Video in the Article was a volitional act by Defendant, which caused the Photographs to be publicly displayed on the Website.

33. Defendant made that choice four days after the New York Post first published the Photographs, and in an article reporting on the very event the Post had covered.

34. Defendant used the Photographs for the same purpose for which Plaintiff created them and for which they were published by the New York Post: to show readers Mr. Nootenboom completing his walk, in an article reporting on that same event.

35. Copies of screengrabs of the Article displaying the Photographs, including the URL of the Article, are attached hereto as Exhibit 2.

36. Each of the Infringements includes a URL ("Uniform Resource Locator") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be

SLG SANDERS · LAW GROUP ·

communicated for a period of more than a transitory duration and therefore constitutes a specific infringement.

37. Plaintiff did not discover the Infringements earlier than January 6, 2025.

38. On March 4, 2025, and again on April 3, 2025, Plaintiff, through counsel, notified Defendant in writing of the Infringements and demanded that Defendant cease displaying the Photographs. The embedded video has since been removed from the Website.

39. To date, Defendant has not compensated Plaintiff for its use of the Photographs.

40. Upon information and belief, Defendant is a sophisticated media company that owns or operates a large portfolio of radio stations, websites, and social media accounts, and has advanced operational expertise in an industry where copyright is prevalent.

41. Upon information and belief, Defendant's staff have significant experience in copyright matters due to the company's background as a large media company and are familiar with journalistic practices, including the need to ensure that images and videos used on Defendant's websites have been properly licensed.

42. Defendant understands the value of copyright and the necessity of licensing. In its annual report, Defendant states that it "own[s] or ha[s] the rights to copyrights that protect the content of [its] products" and that it "pay[s] royalties to song composers and publishers through four performing rights organizations." The Terms of Use governing Defendant's websites declare that "Townsquare owns and retains all proprietary rights in the Websites" and provide that visitors "may not copy, modify, publish, transmit, distribute, perform, display, or sell" that content. Defendant thus demands from others the very respect for copyright that it denied Plaintiff.

43. Defendant's unlicensed use of photographs and videos on its websites is not an isolated occurrence. Since 2016, Defendant has been named as a defendant in at least fifty-one copyright infringement actions in this District arising from its unlicensed use of photographs and videos on websites it owns and operates, including:

(a) *Sadowski v. Townsquare Media, Inc.*, No. 1:16-cv-06408 (S.D.N.Y. filed Aug. 11, 2016);

(b) *Tabak v. Townsquare Media, Inc.*, No. 1:16-cv-07800 (S.D.N.Y. filed Oct. 6, 2016);

(c) *Parisienne v. Townsquare Media, Inc.*, No. 1:17-cv-00500 (S.D.N.Y. filed Jan. 23, 2017);

(d) *Zlozower v. Townsquare Media, Inc.*, No. 1:17-cv-04161 (S.D.N.Y. filed June 3, 2017);



SLG SANDERS · LAW GROUP ·

(e) *Sands v. Townsquare Media, Inc.*, No. 1:17-cv-07259 (S.D.N.Y. filed Sept. 24, 2017);

(f) *Mazza v. Townsquare Media, Inc.*, No. 1:18-cv-01992 (S.D.N.Y. filed Mar. 6, 2018);

(g) *Fowler v. Townsquare Media, Inc.*, No. 1:18-cv-03794 (S.D.N.Y. filed Apr. 29, 2018);

(h) *Zlozower v. Townsquare Media, Inc.*, No. 1:18-cv-06071 (S.D.N.Y. filed July 3, 2018);

(i) *Global Interactive Media, Inc. v. Townsquare Media, Inc.*, No. 1:18-cv-06880 (S.D.N.Y. filed July 31, 2018);

(j) *McGlynn v. Townsquare Media, Inc.*, No. 1:18-cv-08875 (S.D.N.Y. filed Sept. 27, 2018);

(k) *Vollweiler v. Townsquare Media, Inc.*, No. 1:18-cv-10274 (S.D.N.Y. filed Nov. 5, 2018);

(l) *McDermott v. Townsquare Media, Inc.*, No. 1:18-cv-11452 (S.D.N.Y. filed Dec. 7, 2018);

(m) *Hermann v. Townsquare Media, Inc.*, No. 1:18-cv-12088 (S.D.N.Y. filed Dec. 20, 2018);

(n) *Hirsch v. Townsquare Media, Inc.*, No. 1:19-cv-01444 (S.D.N.Y. filed Feb. 14, 2019);

(o) *Chevrestt v. Townsquare Media, Inc.*, No. 1:19-cv-01993 (S.D.N.Y. filed Mar. 3, 2019);

(p) *Zlozower v. Townsquare Media, Inc.*, No. 1:19-cv-03395 (S.D.N.Y. filed Apr. 16, 2019);

(q) *Walsh v. Townsquare Media, Inc.*, No. 1:19-cv-04958 (S.D.N.Y. filed May 28, 2019);

(r) *Malluk v. Townsquare Media, Inc.*, No. 1:19-cv-06461 (S.D.N.Y. filed July 11, 2019);

(s) *Schiffman v. Townsquare Media, Inc.*, No. 1:19-cv-10467 (S.D.N.Y. filed Nov. 12, 2019);

(t) *Soler v. Townsquare Media, Inc.*, No. 1:20-cv-01119 (S.D.N.Y. filed Feb. 9, 2020);

(u) *Fedun v. Townsquare Media, Inc.*, No. 1:20-cv-02344 (S.D.N.Y. filed Mar. 17, 2020);

(v) *Shihab v. Townsquare Media, Inc.*, No. 7:21-cv-00148 (S.D.N.Y. filed Jan. 7, 2021);

(w) *Charming Beats LLC v. BuzzFeed, Inc.*, No. 1:22-cv-02202 (S.D.N.Y. filed Mar. 17, 2022) (naming Defendant as a co-defendant);

(x) *Estate of Modu v. Townsquare Media, Inc.*, No. 1:22-cv-05311 (S.D.N.Y. filed June

23, 2022);

(y) *Eclipse Sportswire v. Townsquare Media, Inc.*, No. 7:23-cv-06375 (S.D.N.Y. filed July 24, 2023);

(z) *Lynk Media LLC v. Townsquare Media, Inc.*, No. 7:23-cv-09877 (S.D.N.Y. filed Nov. 8, 2023);

(aa) *Shook v. Townsquare Media, Inc.*, No. 1:24-cv-01764 (S.D.N.Y. filed Mar. 7, 2024);

(bb) *Borel v. Townsquare Media, Inc.*, No. 1:24-cv-02201 (S.D.N.Y. filed Mar. 24, 2024);

(cc) *Van Sise v. Townsquare Media, Inc.*, No. 7:24-cv-03836 (S.D.N.Y. filed May 17, 2024);

(dd) *Yang v. Townsquare Media, Inc.*, No. 1:24-cv-03841 (S.D.N.Y. filed May 17, 2024);

(ee) *Vila v. Townsquare Media, Inc.*, No. 7:24-cv-03845 (S.D.N.Y. filed May 17, 2024);

(ff) *Santiago v. Townsquare Media, Inc.*, No. 1:24-cv-03851 (S.D.N.Y. filed May 17, 2024);

(gg) *Neil Zlozower Photography Inc. v. Townsquare Media, Inc.*, No. 1:24-cv-03853 (S.D.N.Y. filed May 17, 2024);

(hh) *Stop Making Media, Inc. v. Townsquare Media, Inc.*, No. 1:24-cv-03855 (S.D.N.Y. filed May 17, 2024);

(ii) *Chosen Figure LLC v. Townsquare Media, Inc.*, No. 1:24-cv-03873 (S.D.N.Y. filed May 20, 2024);

(jj) *Hames v. Townsquare Media, Inc.*, No. 1:24-cv-03875 (S.D.N.Y. filed May 20, 2024);

(kk) *Nick Kozak Photography LLC v. Townsquare Media, Inc.*, No. 1:24-cv-03876 (S.D.N.Y. filed May 20, 2024);

(ll) *Ong v. Townsquare Media, Inc.*, No. 1:24-cv-03877 (S.D.N.Y. filed May 20, 2024);

(mm) *McDermott v. Townsquare Media, Inc.*, No. 1:24-cv-03883 (S.D.N.Y. filed May 20, 2024);

(nn) *Polaris Images Corp. v. Townsquare Media, Inc.*, No. 1:24-cv-04210 (S.D.N.Y. filed June 3, 2024);

(oo) *Richardson v. Townsquare Media, Inc.*, No. 1:24-cv-04217 (S.D.N.Y. filed June 3, 2024), *aff'd in part, vacated in part, and remanded*, 174 F.4th 299 (2d Cir. 2026);

(pp) *Lynk Media LLC v. Townsquare Media, Inc.*, No. 7:24-cv-04222 (S.D.N.Y. filed June 3, 2024);

(qq) *Malluk v. Townsquare Media, Inc.*, No. 1:24-cv-04321 (S.D.N.Y. filed June 6, 2024);

(rr) *Fish v. Townsquare Media, Inc.*, No. 1:24-cv-05610 (S.D.N.Y. filed July 25, 2024);



SLG SANDERS LAW GROUP

(ss) *Michael Grecco Productions, Inc. v. Townsquare Media, Inc.*, No. 7:24-cv-07584 (S.D.N.Y. filed Oct. 7, 2024);

(tt) *Martinka v. Townsquare Media, Inc.*, No. 7:24-cv-07797 (S.D.N.Y. filed Oct. 15, 2024);

(uu) *Moses v. Townsquare Media, Inc.*, No. 7:24-cv-07798 (S.D.N.Y. filed Oct. 15, 2024);

(vv) *Global Weather Productions LLC v. Townsquare Media, Inc.*, No. 7:25-cv-06059 (S.D.N.Y. filed July 23, 2025);

(ww) *Andy Ryan Photographer, LLC v. Townsquare Media, Inc.*, No. 1:25-cv-06542 (S.D.N.Y. filed Aug. 8, 2025);

(xx) *August Image, LLC v. Townsquare Media, Inc.*, No. 7:25-cv-09341 (S.D.N.Y. filed Nov. 7, 2025); and

(yy) *Miller v. Townsquare Media, Inc.*, No. 1:26-cv-06038 (S.D.N.Y. filed July 16, 2026).

44. Each of those actions put Defendant on notice that displaying photographs and videos on its websites without a license from the copyright owner exposes it to liability for copyright infringement. By the time Defendant published the Article in November 2024, at least forty-seven of those actions had been filed against it, including *Richardson*, which arose from Defendant's display of a copyrighted video through a third party's embedded post. Defendant nonetheless embedded the Unauthorized Video without determining whether its uploader had any right to the Photographs it displayed.

45. Upon information and belief, Defendant takes an active and pervasive role in the content posted on the Website, including, but not limited to, selecting, posting, and displaying images and videos, including the Unauthorized Video containing Plaintiff's Photographs.

46. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringements was apparent. Defendant cannot claim that it was not aware of the infringing activities, since such a claim would amount to only willful blindness to the Infringements on the part of Defendant.

47. Upon information and belief, Defendant engaged in the Infringements knowingly and in violation of applicable United States copyright laws, or at a minimum in reckless disregard of Plaintiff's rights.

48. Despite the many actions identified above, upon information and belief, Defendant has not adopted any effective practice for determining whether it holds a license before publishing photographs and video footage that its staff find online, and instead continues to treat such content

as free for the taking.

49. Upon information and belief, Defendant had complete control over and actively reviewed and monitored the content posted on the Website, and had the legal right and ability to control and limit the infringing activities on the Website

50. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringements, in that the Infringements increased traffic to the Website and, in turn, caused Defendant to realize an increase in its advertising revenues.

51. Defendant's use of the Photographs harmed the actual market for the Photographs, and Defendant's use of the Photographs, if widespread, would harm Plaintiff's potential market for the Photographs.

52. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

**FIRST COUNT**
**(Direct Copyright Infringement, 17 U.S.C. § 501 et seq.)**

53. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

54. The Photographs are original, creative works in which Plaintiff owns valid copyrights.

55. The Photographs are properly registered with the USCO, and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

56. Plaintiff has not granted Defendant a license or the right to use the Photographs in any manner, nor has Plaintiff assigned any of his exclusive rights in the copyrights to Defendant.

57. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. § 106, Defendant publicly displayed the Photographs on the Website, thereby violating Plaintiff's exclusive right of public display under 17 U.S.C. § 106(5).

58. Defendant's display of the Photographs constitutes willful copyright infringement.

59. Defendant's willfulness is shown by, among other things, its selection, to illustrate an article reporting on a news event, of a video assembled entirely from a news organization's photographs and uploaded by an anonymous channel that is not a news organization and could not plausibly have held any rights in them; its failure to make any inquiry into the uploader's rights; and its embedding of that video after at least forty-seven copyright infringement actions, including

SLG SANDERS LAW GROUP

one arising from its display of embedded content, had been filed against it.

60. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each work infringed pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement.

61. As a result of Defendant's violations of Title 17 of the U.S. Code, the Court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees pursuant to 17 U.S.C. § 505 from Defendant.

62. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyrights pursuant to 17 U.S.C. § 502.

## JURY DEMAND

63. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment finding that Defendant has infringed on Plaintiff's rights to the Photographs in violation of 17 U.S.C. § 501 et seq. and award damages and monetary relief as follows:

a. finding that Defendant infringed Plaintiff's copyright interests in and to the Photographs by publicly displaying them without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: November 23, 2026

SANDERS LAW GROUP

By: */s/ Craig Sanders*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 131510

*Attorneys for Plaintiff*

SLG SANDERS LAW GROUP